2014 UT App 4

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joseph Logan LEE, Defendant and Appellant.**

**No. 20110707–CA.**

Court of Appeals of Utah.

Jan. 9, 2014.

Randall W. Richards, for Appellant.

Sean D. Reyes, Karen A. Klucznik, and John J. Nielsen, for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judge GREGORY K. ORME concurred. Judge J. FREDERIC VOROS JR. concurred, with opinion.

CHRISTIANSEN, Judge:

¶ 1 Joseph Logan Lee appeals from his conviction for murder, a first degree felony, and for unlawful possession of a firearm and for failure to stop at the command of a police officer, both third degree felonies. We affirm.

## BACKGROUND

¶ 2 Lee met with the victim, T.H., on June 1, 2006, to settle a drug debt owed to T.H. by a friend of Lee's.[1] At some point during the exchange, T.H. was leaning through the open driver's window of Lee's car when Lee pulled out a handgun. While the parties dispute what happened next, Lee ultimately fired two shots, one of which struck T.H. and killed him almost instantly. Lee fled the scene but later that day was identified and pursued by police, who apprehended Lee after his vehicle struck a median and was disabled. Subsequent to Lee's arrest, police found two speed-loaders for a .357 magnum revolver on Lee's person and a .357 magnum revolver on the driver's floorboard of Lee's car. Lee was charged by information based on the shooting and his flight from police.

¶ 3 Lee retained private counsel (Trial Counsel) to represent him. Trial Counsel entered his appearance at a May 10, 2007 hearing and notified the trial court that he would be filing a motion in limine seeking to admit the testimony of a proposed defense witness. Trial Counsel had difficulty timely filing the motion and requested additional time on at least three occasions. Trial Counsel ultimately filed the motion approximately ten days after the final deadline given by the trial court, but the trial court allowed briefing and oral argument on the motion to proceed and ruled on the merits of the motion, granting it in part.

¶ 4 The case proceeded to trial, and Lee argued that he had shot T.H. in self-defense. In support of this theory, Lee introduced testimony that he had met T.H. while the two men were incarcerated at the Utah State Prison, that T.H. often carried a gun, and

that Lee was paying off the drug debt because T.H. had threatened a friend of Lee's. Lee testified that just before the shooting he handed the gun to T.H. as a showing of good faith, that T.H. turned the gun on Lee, and that Lee wrestled the gun away from him. Lee testified that he then shot T.H. because he believed T.H. was reaching behind his back for another gun. T.H.'s girlfriend, the only other eyewitness to the shooting, testified for the State that T.H. was unarmed and was not threatening Lee at the time of the shooting. At the close of trial, the court instructed the jury as to both self-defense and imperfect self-defense at Lee's request. The jury found Lee guilty of murder, and he appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 As an initial matter, Lee requests a remand for an evidentiary hearing under rule 23B for the development of the record and the entry of factual findings necessary for this court's review of his ineffective assistance of counsel claim. See Utah R.App. P. 23B. A remand under rule 23B will only be granted "upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." See id.

¶ 6 Lee claims that he was denied effective assistance of counsel due to multiple alleged deficiencies on the part of Trial Counsel. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." State v. Ott, 2010 UT 1, ¶ 22, 247 P.3d 344 (citation and internal quotation marks omitted).

¶ 7 Lee also argues that the trial court erroneously instructed the jury as to the elements of murder and manslaughter in light of Lee's claim of self-defense. "Claims of erroneous jury instructions present questions of law that we review for correctness." State v. Jeffs, 2010 UT 49, ¶ 16, 243 P.3d 1250.

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict." Smith v. Fairfax Realty, Inc., 2003 UT 41, ¶ 3, 82 P.3d 1064 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Lee's Rule 23B Motion Is Not Adequately Supported to Warrant Remand for an Evidentiary Hearing.

¶ 8 Lee asserts that a remand for an evidentiary hearing is appropriate to address all of the claims of Trial Counsel's alleged deficiencies that Lee raises on appeal. However, remand under rule 23B is available only upon a motion that alleges nonspeculative facts that do not appear in the record and is accompanied by affidavits setting forth those facts. *See* Utah R.App. P. 23B(a), (b). To succeed on the motion, Lee must "allege facts that if true would show (1) 'that counsel's performance was so deficient as to fall below an objective standard of reasonableness' and (2) 'that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different.'" *State v. King*, 2012 UT App 203, ¶ 18, 283 P.3d 980 (quoting *State v. Hales*, 2007 UT 14, ¶ 68, 152 P.3d 321).

### A. Claims Based on Record Evidence

■■■ ¶ 9 Lee argues that Trial Counsel performed deficiently because he did not object to the jury instructions on murder and self-defense, did not comply with the trial court's orders to timely file a motion in limine, and introduced the fact of Lee's prior incarceration during his opening statement and examination of witnesses. However, Lee does not identify any evidence that is not already in the record on appeal to support these claims of ineffective assistance. "A [rule 23B] remand is not necessary if the facts underlying the ineffectiveness claim are contained in the existing record." *State v. Johnston*, 2000 UT App 290, ¶ 9, 13 P.3d 175 (per curiam).

¶ 10 Here, all of the jury instructions at issue appear in the record. The trial transcript contains all of the relevant discussions between the court and counsel regarding the jury instructions and Trial Counsel's waiver of objections to the final jury instructions. The record also includes transcripts of the hearings in which the untimely motion in limine were discussed, the motion itself, all supporting and responsive briefing, and the trial court's ruling on the motion. Finally, Trial Counsel's opening statement in which he referred to Lee's prior incarceration is part of the trial transcript in the record. As a result, Lee has not demonstrated that any additional non-record evidence is available to support these claims on appeal, and remand is therefore inappropriate. *See id.*

### B. Claims Based on Non–Record Evidence

■■■ ¶ 11 Lee also argues that Trial Counsel performed deficiently because he failed to adequately investigate the case and to call a witness who Lee claims would have supported his self-defense claim (the Witness). However, a rule 23B motion must include "affidavits alleging facts not fully appearing in the record on appeal that show the claimed deficient performance of the attorney" and show "the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." Utah R.App. P. 23B(b). "[T]o obtain a Rule 23B remand, a defendant must not only submit affidavits specifying who the uncalled witnesses are and that they are available to testify at an evidentiary hearing, he must ordinarily submit affidavits from the witnesses detailing their testimony." *Johnston*, 2000 UT App 290, ¶ 11, 13 P.3d 175. To show that counsel's failure to investigate resulted in prejudice "as a demonstrable reality and not a speculative matter," a rule 23B movant must identify exculpatory testimony or evidence that his attorney failed to uncover. *See State v. Bryant*, 2012 UT App 264, ¶ 23, 290 P.3d 33 (citation and internal quotation marks omitted) (concluding that no prejudice resulted from trial counsel's failure to investigate because defendant did not identify any evidence that his trial counsel allegedly failed to discover).

¶ 12 Here, Lee did not support his rule 23B motion with an affidavit from the Witness. Lee also has not identified any particular evidence, other than his proffer of the Witness's potential testimony, that Trial Counsel failed to uncover. Lee offered affidavits only from his mother and a member of his appellate counsel's staff averring that Trial Counsel did not hire a private investigator and may not have adequately reviewed

the Witness's statement. However, Lee cannot meet his burden by merely pointing out what counsel did not do; he must bring forth the evidence that would have been available in the absence of counsel's deficient performance. *See id.; Johnston,* 2000 UT App 290, ¶ 7, 13 P.3d 175 ("The purpose of Rule 23B is for appellate counsel to put on evidence he or she now has, not to amass evidence that might help prove an ineffectiveness of counsel claim."). Absent affidavits demonstrating a likelihood that further review of the Witness's testimony or inquiry by an investigator would have uncovered evidence sufficient to support Lee's claims, remand for an evidentiary hearing is not appropriate. We therefore deny Lee's motion for a remand under rule 23B.[2]

II. Lee Has Not Demonstrated That Trial Counsel Was Ineffective.

¶ 13 Lee argues that Trial Counsel was ineffective by failing to adequately investigate the case, failing to call the Witness at trial, failing to comply with the trial court's deadlines for filing a motion in limine, and introducing the fact of Lee's prior incarceration in opening statements and witness examination. To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. This showing requires the defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (citation and internal quotation marks omitted; *see also State v. Larrabee,* 2013 UT 70, ¶ 19, —— P.3d ——, 2013 WL 6164424). To establish the preju-

dice prong of· an ineffective assistance of counsel claim, the "defendant must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *State v. Millard,* 2010 UT App 355, ¶ 18, 246 P.3d 151; *accord Strickland,* 466 U.S. at 694, 104· S.Ct. 2052. "In the event it is 'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' we will do so without analyzing whether counsel's performance was professionally unreasonable." *Archuleta v. Galetka,* 2011 UT 73, ¶ 42, 267 P.3d 232 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

A. Failure To Investigate and Call the Witness

■ ¶ 14 Lee argues that Trial Counsel's performance was deficient for failure to investigate the case prior to trial. The only evidence Lee identifies that Trial Counsel allegedly failed to uncover in his investigation is the testimony of the Witness. Accordingly, we consider this claim together with Lee's claim that Trial Counsel's performance was deficient for failing to call the Witness.

¶ 15 Lee asserts that the Witness was present at the time of the shooting and that if Trial Counsel had investigated and called the Witness, she would have offered testimony that contradicted the testimony of T.H.'s girlfriend. However, because we are unable to grant a rule 23B remand due to Lee's failure to include an affidavit from the Witness detailing her testimony, *see supra* ¶ 12, there is nothing in the record before this court upon which we can evaluate the merits of Trial Counsel's decision not to call the Witness. "Where the record appears inadequate in any fashion, ambiguities or deficiencies resulting therefrom simply will be construed in favor of a finding that counsel performed effectively." *State v. Litherland,* 2000 UT 76, ¶ 17, 12 P.3d 92. We therefore must assume that Trial Counsel's decision regarding this witness was not deficient per-

---

**2.** Lee's motion also states that Trial Counsel "was in the middle of his disbarment proceedings at the time leading up to and during the trial," and an exhibit to the motion includes excerpts from the *Utah Bar Journal* detailing disciplinary sanctions entered against Trial

Counsel for his failure to comply with the Utah Rules of Professional Conduct in other cases. However, Lee fails to explain how this evidence would support any of his claims in this case if remand were granted to enter this exhibit into the record.

formance. Because Lee has not demonstrated that Trial Counsel performed deficiently, we conclude that Trial Counsel was not ineffective on this basis.

### B. Failure To Comply with Deadlines for Filing a Motion in Limine

 ¶ 16 Lee next argues that Trial Counsel performed deficiently in failing to file a motion in limine in compliance with the trial court's deadlines for filing of the motion. While the record shows that Trial Counsel repeatedly failed to submit the motion within the time allowed by the trial court, the record also shows that the trial court nevertheless considered the motion on the merits and partially granted it. Though we agree that Trial Counsel's repeated failure to timely file the motion in limine was likely deficient performance, Lee has not demonstrated that he was prejudiced by Trial Counsel's late filing of the motion. Rather, Lee frankly concedes that "the effect on the outcome of the trial is admittedly somewhat speculative." However, "proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *State v. Munguia,* 2011 UT 5, ¶ 31, 253 P.3d 1082 (citation and internal quotation marks omitted). Specifically, Lee has not demonstrated how a more timely filing would have led to a different result in either the trial court's ruling on the motion or the jury's ultimate verdict. Absent a showing that Lee was prejudiced by Trial Counsel's alleged error, we conclude that Lee is not entitled to relief on this basis.

### C. Introduction of Lee's Prior Incarceration

 ¶ 17 Lee also argues that Trial Counsel performed deficiently in raising the issue of Lee's prior conviction and incarceration during his opening statement and examination of witnesses. Lee argues that by introducing the evidence of Lee's prior crimes and incarceration, Trial Counsel inappropriately called the jury's attention to Lee's criminal background and damaged his credibility as a witness. In evaluating whether counsel was deficient, we will not "second-guess trial counsel's legitimate strategic choices," *State v. Franco,* 2012 UT App 200, ¶ 7, 283 P.3d 1004 (citations and internal

quotation marks omitted). Rather, if there is a "conceivable tactical basis for counsel's actions," *id.* (citation and internal quotation marks omitted), the defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citation and internal quotation marks omitted). *Accord State v. Larrabee,* 2013 UT 70, ¶ 19, —— P.3d ——.

¶ 18 Lee has not overcome the presumption that Trial Counsel had a legitimate strategic basis for his decision to introduce to the jury information regarding Lee's prior convictions and incarceration. Indeed, "many experienced counsel always tell the jury of the convictions their client has suffered. This tends to take the wind out of the sails of the prosecutor." *United States v. Larsen,* 525 F.2d 444, 449 (10th Cir.1975). Because the State is generally permitted to impeach a testifying defendant with evidence of his prior convictions, *see* Utah R. Evid. 609(a), introduction of such prior convictions up front is often a sound strategic decision to build credibility for the defendant and minimize the prejudicial impact of the convictions, *see Larsen,* 525 F.2d at 449; *Swington v. State,* 97–KA–00591–SCT, ¶ 25, 742 So.2d 1106 (Miss.1999). Further, Lee's testimony that he had been incarcerated with T.H. lent support to Lee's self-defense theory by informing the jury that T.H. himself was a felon. While Lee argues that there were "alternative methods of establishing that Lee was afraid of [T.H.] and that he had some dealings with [T.H.] in the past to bolster this fear," this argument itself suggests that Trial Counsel in fact had a conceivable tactical basis for introducing evidence of Lee's incarceration, even if Lee would now prefer some alternative approach. *See Franco,* 2012 UT App 200, ¶ 7, 283 P.3d 1004. Accordingly, we conclude that Trial Counsel did not perform deficiently and therefore did not render ineffective assistance of counsel on this basis.

### III. Trial Counsel Was Not Ineffective for Failing To Object to the Challenged Jury Instructions.

¶ 19 Finally, Lee argues that the jury instructions for the charges of murder (In-

struction 15) and manslaughter (Instruction 16) did not correctly instruct the jury on the State's burden to prove that Lee did not act in self-defense. Because Lee did not preserve this claim for appeal by objecting to the jury instructions at trial, he asks this court to review the jury instructions on the basis of plain error or ineffective assistance of counsel. "When a party fails to preserve an issue for appeal, we will address the issue only if (1) the appellant establishes that the district court committed plain error, (2) exceptional circumstances exist, or (3) in some situations, if the appellant raises a claim of ineffective assistance of counsel in failing to preserve the issue." *State v. Low*, 2008 UT 58, ¶ 19, 192 P.3d 867 (citations and internal quotations marks omitted).

## A. Plain Error

■■■ ¶ 20 Lee argues that the trial court's instructions to the jury constituted plain error and that this court should reverse to avoid a manifest injustice. To obtain appellate relief under this standard, Lee must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Casey*, 2003 UT 55, ¶ 41, 82 P.3d 1106 (citation and internal quotation marks omitted). However, invited error precludes appellate review of an issue under the plain error standard. *State v. McNeil*, 2013 UT App 134, ¶ 24, 302 P.3d 844.

¶ 21 Here, the trial court asked Trial Counsel, "Does the defense waive any objections to the instructions?" and Trial Counsel responded, "Yes." This affirmative representation to the court that there was no objection to the jury instructions forecloses Lee from "tak[ing] advantage of an error committed at trial" because Trial Counsel "led the trial court into committing the error." *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111 (alteration in original) (citation and internal quotation marks omitted). Thus, Trial Counsel's waiver of any objection to the finalized jury instructions precludes our review of those instructions for plain error.

## B. Ineffective Assistance of Counsel

¶ 22 Lee also contends that Trial Counsel was ineffective due to his failure to object to the self-defense and imperfect self-defense instructions given by the trial court. To prevail, Lee must show that Trial Counsel's performance was deficient and that Lee was prejudiced by the deficient performance. *Gregg v. State*, 2012 UT 32, ¶ 19, 279 P.3d 396. Failure to object to jury instructions that correctly state the law is not deficient performance. *See State v. Chavez–Espinoza*, 2008 UT App 191, ¶ 15, 186 P.3d 1023.

■■■ ¶ 23 Lee argues that the jury instructions were erroneous because the murder and manslaughter instructions did not include as an element of the offense that the prosecution had the burden to prove that Lee did not act in self-defense. He claims that Trial Counsel's failure to object and propose "adequate" instructions was deficient performance. On appeal, "we look at the jury instructions in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case." *See State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892 (citation and internal quotation marks omitted). Thus, even if "one or more of the instructions, standing alone, are not as full or accurate as they might have been," counsel is not deficient in approving the instructions "as long as the trial court's instructions constituted a correct statement of the law." *See State v. Garcia*, 2001 UT App 19, ¶ 13, 18 P.3d 1123 (citations and internal quotation marks omitted).

### 1. Murder Instruction

■■■ ¶ 24 Lee contends that the jury instructions on murder were erroneous because the trial court instructed the jury separately as to the State's burden to disprove his self-defense claim rather than incorporating that burden as an element of the murder instruction. Our review of the jury instructions confirms that Instruction 15 properly instructed the jury as to the elements of murder. *See* Utah Code Ann. § 76–5–203(2) (LexisNexis Supp.2006); *State v. Knoll*, 712 P.2d 211, 214 (Utah 1985) ("Absence of self-defense is not an element of a homicide offense."). In addition, the jury was sepa-

rately and accurately instructed that "if you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, then you must find him not guilty" of murder or manslaughter. Taken together, these instructions fairly instructed the jury on the burden of proof relative to Lee's claim of self-defense and are a "correct statement of the law" applicable to the case. *See Garcia,* 2001 UT App 19, ¶ 13, 18 P.3d 1123 (citation and internal quotation marks omitted).

¶ 25 Lee argues that because the jury was instructed on murder separately from and prior to the instruction on self-defense, it is "highly likely" that these instructions led the jury to determine that he was guilty of murder "without realizing that proof of the lack of self-defense beyond a reasonable doubt is an essential element of the charge of murder." However, the jury was instructed "not to single out one instruction alone as stating the law" but to "consider the instructions as a whole," giving the order of the instructions "no significance as to their relative importance." We "presume that a jury ... follow[ed] the instructions given it" unless the facts indicate otherwise. *See State v. Nelson,* 2011 UT App 107, ¶ 4, 253 P.3d 1094 (citation and internal quotation marks omitted). Particularly in this case, where self-defense was the central theme of Lee's defense at trial, and given the intuitive effect of a self-defense claim on a charge of murder, it is unlikely that the separate instruction on self-defense led the jury to convict Lee of murder on the basis of Instruction 15 without considering his self-defense claim. Because the jury was correctly instructed on the charge of murder, Trial Counsel did not perform deficiently in failing to object or propose an alternate murder instruction. *See Chavez–Espinoza,* 2008 UT App 191, ¶ 15, 186 P.3d 1023.

2. Manslaughter Instruction

¶ 26 Lee also challenges Instruction 16, which instructed the jury to find Lee guilty of manslaughter if it found that he caused T.H.'s death under circumstances constituting imperfect self-defense. *See* Utah Code Ann. § 76–5–203(4) (providing that a charge of murder is reduced to manslaughter if the defendant caused the death "under a reasonable belief that the circumstances provided a legal justification or excuse for the conduct although the conduct was not legally justifiable or excusable under the existing circumstances"). Lee argues that the instruction failed to properly instruct the jury as to the State's burden to disprove an imperfect self-defense claim beyond a reasonable doubt. We agree.

¶ 27 Because the burden of proof for an affirmative defense is counterintuitive, instructions on affirmative defenses "must clearly communicate to the jury what the burden of proof is *and* who carries the burden." *State v. Campos,* 2013 UT App 213, ¶ 42, 309 P.3d 1160 (citations and internal quotation marks omitted). "[O]nce a defendant has produced some evidence of imperfect self-defense, the prosecution is required to disprove imperfect self-defense beyond a reasonable doubt." *Id.* ¶ 38. Instruction 16 provides, in relevant part,

> Before you can convict the defendant of the lesser included offense of manslaughter ... you must find from the evidence, *beyond a reasonable doubt,* all of the following elements of the crime:
>
> (1) That defendant, Joseph Logan Lee;
>
> (2) Committed a homicide which would be murder, but the offense is reduced because the defendant caused the death of [T.H.]:
>
> ...
>
> > (ii) Under a reasonable belief that the circumstances provided a legal justification or excuse for his conduct although the conduct was not legally justifiable or excusable under the existing circumstances.
>
> If you believe that the evidence established each and all of the essential elements of the offense *beyond a reasonable doubt,* it is your duty to convict the defendant. On the other hand, if the evidence failed to establish one or more of said elements, it is your duty to find the defendant not guilty.

(Emphases added.) *See* Utah Code Ann. § 76–5–203(4). Thus, the jury was instruct-

ed that in order to convict Lee of imperfect self-defense manslaughter rather than murder, it needed to find that all of the listed elements were proven beyond a reasonable doubt, including that Lee acted under a reasonable belief that his actions were legally justifiable. This instruction improperly placed the burden upon Lee to prove his affirmative defense beyond a reasonable doubt rather than correctly placing the burden on the State to *disprove* the defense beyond a reasonable doubt. *See Campos,* 2013 UT App 213, ¶ 42, 309 P.3d 1160. Trial Counsel had a duty to object to such a fundamentally flawed instruction and to ensure that the jury was properly instructed on the correct burden of proof. *See id.* ¶ 45. We see no conceivable tactical basis for Trial Counsel's approval of such a flawed instruction and conclude that Trial Counsel performed deficiently in failing to object to Instruction 16.

■ ¶ 28 However, our inquiry does not end with our determination that Trial Counsel performed deficiently in not objecting to the erroneous instruction. Lee must also demonstrate that "but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Smith,* 909 P.2d 236, 243 (Utah 1995). Lee argues that the facts of this case are analogous to *State v. Garcia,* 2001 UT App 19, 18 P.3d 1123, where this court concluded that the defendant was prejudiced by a jury instruction that did not clearly place the burden of proof for self-defense on the State. *Id.* ¶ 19. There, we noted that "some evidence was introduced by Garcia that he acted in self-defense," including corroboration of his testimony by another witness. *Id.* We observed that had the jury been correctly instructed as to the burden of proof, "it is reasonably likely that the jury could have entertained a reasonable doubt as to whether Garcia acted in self-defense, thus requiring acquittal." *Id.* Accordingly, we reversed Garcia's conviction and remanded for a new trial. *Id.* ¶¶ 20–21.

¶ 29 However, in this case, neither the State nor Lee introduced evidence that would support Lee's theory that he caused T.H.'s death under a reasonable, but legally mistaken, belief that his use of deadly force was justified. The testimony elicited by the State demonstrated that T.H. was unarmed and was not threatening Lee when Lee shot him. The jury could not have found that Lee acted reasonably or with legal justification in shooting T.H. under these circumstances. The State's evidence therefore supports Lee's conviction for murder. Conversely, the evidence put forth by Lee supports his acquittal on the basis of perfect self-defense. Lee testified that T.H. was the first aggressor when he pointed the gun at Lee and that after Lee regained possession of the gun, he fired only when he believed T.H. was reaching for another gun. If the jury believed Lee's version of events, then he would have been justified in using deadly force to defend himself and been entitled to an acquittal on the charge of murder. However, there is no basis on this evidence for the jury to find that Lee acted reasonably but without legal justification.

¶ 30 This case is unlike our decision in *State v. Spillers,* 2005 UT App 283, 116 P.3d 985, *aff'd,* 2007 UT 13, 152 P.3d 315, where we determined that the trial court's failure to give an instruction on imperfect self-defense was in error. *Id.* ¶ 26. There, Spillers shot the victim after the victim had struck Spillers once in the head with the butt of a handgun and was attempting to strike him again. *Id.* ¶ 20. The state argued that the evidence gave rise to only two interpretations—that Spillers' actions rose to the level of perfect self-defense because he was about to suffer death or serious bodily injury from being struck with the butt of the gun or that Spillers had not acted in self-defense and was guilty of murder. *Id.* ¶ 25. However, we concluded that the evidence supported other interpretations, specifically "an interpretation that [Spillers] was entitled to defend himself against an attack by [the victim] but not entitled to use deadly force" because the jury could have concluded that the victim's strikes with the butt of the gun did not threaten Spillers with serious bodily injury or death. *Id.* We reversed and remanded for a new trial on the basis of the trial court's failure to give the requested imperfect self-defense instruction, *id.* ¶ 26, and the Utah Supreme Court affirmed, *State v. Spillers,*

2007 UT 13, ¶ 23, 152 P.3d 315. Unlike in *Spillers,* however, as explained above, there is no evidence in this case to suggest that Lee used excessive force in reasonably responding to a threat from T.H., or that Lee's actions were otherwise reasonable but legally unjustifiable.

¶ 31 We also do not read our supreme court's decision in *State v. Low,* 2008 UT 58, 192 P.3d 867, as requiring a reversal in this case. In *Low,* the supreme court reviewed the trial court's decision to include, over the defendant's objection, an imperfect self-defense instruction requested by the state. *Id.* ¶ 31. The supreme court held that the imperfect self-defense instruction was appropriate, explaining that "when a defendant presents evidence of perfect self-defense, he necessarily presents evidence of imperfect self-defense because 'for both perfect and imperfect self-defense, the same basic facts [are] at issue.'" *Id.* ¶ 32 (alteration in original) (quoting *Spillers,* 2007 UT 13, ¶ 23, 152 P.3d 315). However, this conclusion was based on the court's observation that "perfect self-defense and imperfect self-defense require the defendant to present the same evidence: that the defendant had a reasonable belief that force was necessary to defend himself." *Id.* It is therefore clear that the supreme court was considering only the evidence necessary for an imperfect self-defense claim to be "put into issue" such that an instruction on the affirmative defense was properly given to the jury. *Id.* ¶¶ 34, 45 (citation and internal quotation marks omitted). The court went on to recognize that there is a fundamental difference between the two defenses, specifically, "whether the defendant's conduct was, in fact, 'legally justifiable or excusable under the existing circumstances.'" *Id.* ¶ 32 (quoting Utah Code Ann. § 76–5–203(4)(a)(ii) (LexisNexis Supp. 2007)).

¶ 32 Thus, *Low* stands for the proposition that once evidence is introduced by either party that the defendant reasonably believed that he was justified in using force, the trial court must instruct the jury on both self-defense and imperfect self-defense upon the request of a party, and that its failure to do so would be error. *See id.; see also Garcia,*

2001 UT App 19, ¶ 8, 18 P.3d 1123 (explaining that an instruction on self-defense must be given when there is a reasonable basis in the evidence to do so, irrespective of "whether the evidence is produced by the prosecution or by the defendant"). It does not, however, stand for the proposition that any time a defendant presents evidence that he reasonably believed that his use of force was justified, the complete evidentiary picture before the jury would *necessarily* support a conviction for imperfect self-defense manslaughter. Rather, in the absence of evidence from which a jury could find that the defendant's belief was reasonable, but his conduct was not "legally justifiable or excusable under the existing circumstances," a conviction for imperfect self-defense manslaughter would not be supported by the evidence. *See Low,* 2008 UT 58, ¶ 32, 192 P.3d 867 (citation and internal quotation marks omitted).

¶ 33 There is no evidence in this case to suggest that Lee used excessive force in reasonably responding to a threat from T.H. or that Lee's actions were otherwise reasonable but legally unjustifiable. Because the jury could not have concluded that Lee caused T.H.'s death under circumstances constituting imperfect self-defense, there is no reasonable probability that the jury would have returned a more favorable verdict for Lee if properly instructed. Thus, while Trial Counsel performed deficiently by not objecting to the erroneous Instruction 16, Lee has not demonstrated that he was prejudiced by that deficient performance, and is therefore not entitled to relief on this basis.

## CONCLUSION

¶ 34 We deny Lee's motion to remand for an evidentiary hearing because Lee did not adequately support the motion with affidavits alleging nonspeculative facts. Lee has failed to demonstrate that the jury instruction on murder was erroneous. While the jury instruction on imperfect self-defense manslaughter was erroneous, Lee has not demonstrated that he was prejudiced by Trial Counsel's failure to object to the erroneous instruction under the circumstances. Lee has also failed to demonstrate that Trial

Counsel was ineffective on any other basis. Accordingly, we affirm Lee's convictions.

VOROS, Judge (concurring):

¶ 35 I concur in the majority opinion. I write only to clarify why, in my judgment, Lee was not prejudiced by the erroneous instruction on imperfect self-defense on the facts of this case and under controlling statutory law.

¶ 36 The interplay between perfect self-defense and imperfect self-defense is subtle. Perfect self-defense is a complete defense to any crime. *See State v. Knoll,* 712 P.2d 211, 214 (Utah 1985) ("[S]elf-defense is a *justification* for killing and a defense to prosecution." (citation and internal quotation marks omitted)); *see also State v. Spillers,* 2007 UT 13, ¶ 23, 152 P.3d 315 (referring to this first type of self-defense as "perfect self-defense"). It is available to one who reasonably believed that force was necessary to defend against unlawful force:

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that force is necessary to defend himself or a third person against such other's imminent use of unlawful force.

Utah Code Ann. § 76-2-402(1) (LexisNexis 2003). But this general rule is subject to a crucial corollary: the use of lethal force is justified only in the reasonable belief that it is "necessary to prevent death or serious bodily injury ... or to prevent the commission of a forcible felony." *Id.*[3]

¶ 37 In contrast, imperfect self-defense is a partial defense, reducing a charge of murder or attempted murder to manslaughter or attempted manslaughter. *State v. Low,* 2008 UT 58, ¶ 22, 192 P.3d 867. It is available to one who reasonably *but incorrectly* believed that his use of lethal force was legally justified:

> It is an affirmative defense to a charge of murder or attempted murder that the defendant caused the death of another or attempted to cause the death of another ... under a reasonable belief that the circumstances provided a legal justification or excuse for his conduct although the conduct was not legally justifiable or excusable under the existing circumstances.

Utah Code Ann. § 76-5-203(4)(a), (a)(ii) (LexisNexis Supp.2006).

¶ 38 In *State v. Low* our supreme court identified the factor distinguishing perfect self-defense from imperfect self-defense: "whether the defendant's conduct was, in fact, 'legally justifiable or excusable under the existing circumstances.'" 2008 UT 58, ¶ 32, 192 P.3d 867 (quoting Utah Code Ann. § 76-5-203(4)(a)(ii) (LexisNexis Supp.2007)). In other words, if, under the facts as he reasonably believed them to be, the defendant's conduct was legally justifiable, he then acted in perfect self-defense. If, under the facts as he reasonably believed them to be, he reasonably but incorrectly believed his actions were legally justifiable, he acted in imperfect self-defense.

¶ 39 Ordinarily "for both perfect and imperfect self-defense, 'the same basic facts [are] at issue.'" *Spillers,* 2007 UT 13, ¶ 23, 152 P.3d 315 (alteration in original) (quoting *State v. Howell,* 649 P.2d 91, 95 (Utah 1982)). So when would a person ever reasonably but incorrectly believe he was entitled to use force to defend himself? *Spillers* suggests the answer.

¶ 40 Spillers shot a man who, Spillers testified, had struck him with a gun on the back of the head and was poised to strike again. *Id.* ¶ 3. The State argued that the evidence permitted the jury to reach one of only two results: either Spillers had committed murder or he had acted in perfect self-defense. *Id.* ¶¶ 21-23. But the supreme court concluded that the evidence was amenable to a

---

3. For purposes of this statutory section, a forcible felony includes aggravated assault, most homicides, kidnapping, many sex crimes, and any other felony involving "the use of force or violence against a person so as to create a substantial danger of death or serious bodily injury." Utah Code Ann. § 76-2-402(4) (LexisNexis 2003). An assault is aggravated if the actor uses a dangerous weapon or "other means or force likely to produce death or serious bodily injury." *Id.* § 76-5-103(1). A dangerous weapon is "any item capable of causing death or serious bodily injury" or, under certain circumstances, a facsimile or representation of the item. *Id.* § 76-1-601(5).

third interpretation: Spillers was entitled to defend himself against his assailant, but not with lethal force. *Id.* ¶ 23. In other words, where Spillers's assailant was using his gun as a club, a jury might find that Spillers reasonably but incorrectly believed that lethal force was "necessary to prevent death or serious bodily injury ... or to prevent the commission of a forcible felony." Utah Code Ann. § 76–2–402(1) (LexisNexis 2003). Accordingly, the court held that the trial court erred in denying Spillers an imperfect self-defense instruction. *Spillers,* 2007 UT 13, ¶ 23, 152 P.3d 315.

¶ 41 We learn from *Spillers* that a defendant is entitled to an instruction on imperfect self-defense if a jury could conclude from the evidence that he reasonably but incorrectly believed he was justified in using lethal force against a non-lethal attack. Stated more generally, imperfect self-defense applies when a defendant makes a reasonable mistake of *law*—when he acts "under a reasonable belief that the circumstances provided a legal justification or excuse for his conduct although the conduct was not legally justifiable or excusable under the existing circumstances." Utah Code Ann. § 76–5–203(4)(a)(ii) (LexisNexis Supp.2006). On the other hand, perfect self-defense applies when a defendant makes a reasonable mistake of *fact*—when his conduct was justifiable under the facts as he reasonably believed them to be.[4]

¶ 42 We can distill *Low* and *Spillers* into a two-part inquiry. To determine whether either version of self-defense is available, we assess both the defendant's understanding of the facts and the defendant's understanding of the law. If the defendant's understanding of the facts is correct (or incorrect but reasonable) and the defendant's understanding of the law is correct, perfect self-defense is available. If the defendant's understanding of the facts is correct (or incorrect but reasonable) and the defendant's understanding of the law is incorrect but reasonable, imperfect self-defense is available. And if either the defendant's understanding of the facts is

unreasonable or the defendant's understanding of the law is incorrect and unreasonable, neither perfect self-defense nor imperfect self-defense is available.

¶ 43 Here, Lee argues in effect that his understanding of the facts was incorrect but reasonable. He testified that, as the altercation escalated, T.H. pointed Lee's own gun at him, Lee grabbed it back, and T.H. reached behind him for what Lee believed was "another gun." If this version of events was true, Lee reasonably but incorrectly believed that T.H. was about to employ lethal force against him, justifying his own use of lethal force. Lee thus qualified for a perfect self-defense instruction because his understanding of the facts was reasonable and his understanding of the law was correct—if T.H. had a gun and intended to use it, Lee was legally entitled to respond with lethal force.

¶ 44 But Lee did not qualify for an imperfect self-defense instruction, because he never claimed that his understanding of the law was reasonable but incorrect; he never claimed that, under the circumstances as he reasonably believed them to be, he reasonably but incorrectly believed he had a right to respond with lethal force. One can imagine a scenario where imperfect self-defense would have been available. Had Lee testified that he shot T.H. because he believed T.H. was pulling, say, brass knuckles out of his back pocket, Lee may have been entitled to an instruction on imperfect self-defense. In that situation, he could argue that he reasonably believed that the circumstances justified his use of lethal force when in fact they justified only his use of non-lethal force.

¶ 45 In short, this case presents the very factual dichotomy that *Spillers* did not: the testimony at Lee's trial allowed only two options—that Lee was "either guilty of murder or [entitled to acquittal] under a [perfect] self-defense theory." *See* 2007 UT 13, ¶ 23, 152 P.3d 315. Accordingly, I conclude that Lee was not prejudiced by trial counsel's

---

4. Of course, perfect self-defense also applies when a defendant makes neither a mistake of law nor a mistake of fact.

failure to object to the erroneous jury instruction on imperfect self-defense.