2018 UT App 32

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ERIC G. MILLERBERG,
Appellant.

Per Curiam Opinion
No. 20140326-CA
Filed February 23, 2018

Second District Court, Ogden Department
The Honorable Scott M. Hadley
No. 121900199

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

Before JUDGES MICHELE M. CHRISTIANSEN, KATE A. TOOMEY, and
DAVID N. MORTENSEN.

PER CURIAM:

¶1      Eric G. Millerberg appeals his convictions after a jury trial. He asserts that he received ineffective assistance of counsel at trial. We disagree and affirm his convictions.

¶2      To establish a claim of ineffective assistance of counsel, "a defendant must show both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *State v. Lee*, 2014 UT App 4, ¶ 13, 318 P.3d 1164 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To demonstrate prejudice, a defendant "must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *Id.* (citation and internal quotation marks omitted). If an appellate court can dispose of a

claim of ineffective assistance based on a lack of prejudice, appellate courts "'will do so without analyzing whether counsel's performance was professionally unreasonable.'" *Id.* (quoting *Archuleta v. Galetka*, 2011 UT 73, ¶ 42, 267 P.3d 232).

¶3 Millerberg first argues that his trial counsel was ineffective for not properly supporting a motion for a change of venue for trial and for not sufficiently addressing pretrial media coverage during voir dire. He contends that negative pretrial publicity affected his right to a fair and impartial jury. However, in focusing on pretrial proceedings, Millerberg cannot establish prejudice because he fails to show that any actual juror was biased.

¶4 A defendant has a right to trial by an impartial jury under both the United States Constitution and the Utah Constitution. *See* U.S. Const. amend. VI; Utah Const. art. I, § 12. Under rule 29 of the Utah Rules of Criminal Procedure, to protect a defendant's right to a fair trial the trial court may change venue if the court determines that a fair and impartial trial cannot be had in the jurisdiction where the action is pending. *See* Utah R. Crim. P. 29(d); *State v. Widdison*, 2001 UT 60, ¶ 33, 28 P.3d 1278. Trial counsel moved for a change of venue in 2013, almost a year after the charges were filed and almost a year before trial was held. The trial court denied the motion, noting that the nature of the pretrial publicity complained of was not presented to the court.

¶5 Millerberg argues that trial counsel provided ineffective assistance because the motion to change venue was not properly supported with specifics of the extensive media coverage portraying him in a negative light and disclosing inappropriate details regarding his criminal history, gang affiliations, and parole status. He also argues that trial counsel failed to investigate potential jurors' exposure to the media coverage during voir dire. In a pretrial setting, a trial court must "assess whether a jury selected from the prospective juror population would be reasonably likely to fall short of the standards for fairness and impartiality to which a defendant is entitled." *State*

*v. Stubbs*, 2005 UT 65, ¶ 14, 123 P.3d 407. In that posture, the characteristics of the community and the possibility of bias are considerations in a prospective evaluation of the pool of potential jurors.

¶6      In a posttrial posture, however, the trial court's ruling on a motion to change venue—and as Millerberg alleges, whether the motion was properly supported—is no longer the relevant issue. "Instead, on direct appeal from a conviction, we implement the traditional test of 'whether [the] defendant was ultimately tried by a fair and impartial jury.'" *Id.* ¶ 13 (quoting *Widdison*, 2001 UT 60, ¶ 38). "Where the alleged harm is a tainted jury in a trial that has already taken place, the question is not a mere likelihood of bias in the jury venire; it is actual bias on the part of the jurors who actually sat." *State v. Nielsen*, 2014 UT 10, ¶ 23, 326 P.3d 645. Further, the "defendant has the burden of demonstrating the existence of actual prejudice." *State v. MacNeill*, 2016 UT App 177, ¶ 22, 380 P.3d 60 (citation and internal quotation marks omitted).

¶7      Millerberg has presented no evidence, or argument, that any one of the jurors was actually biased against him.[1] In fact,

---

1. Millerberg argues that the trial court erred in denying funding for an investigator to interview the jurors to determine if exposure to media coverage resulted in bias. In his initial motion for remand under rule 23B of the Utah Rules of Appellate Procedure, Millerberg raised the funding issue in connection with a claim of juror bias. This court denied the rule 23B motion without prejudice on the issue of juror bias because it was not properly supported. However, we remanded to the trial court for reconsideration of the funding request. After further proceedings in the trial court, Millerberg's appellate counsel filed a suggestion of mootness on the funding issue, stating that an investigator had completed the work and had been paid. Consequently, any issue regarding funding for an investigator to interview jurors has been waived.

even the jurors who had some exposure to the media coverage indicated at voir dire that they could be impartial. Additionally, trial counsel actively participated during voir dire, investigated potential sources of bias, and passed the jury for cause. Millerberg has not shown that any juror was biased. Therefore, he has failed to show prejudice and cannot establish ineffective assistance of counsel regarding pretrial proceedings or jury selection.

¶8    Millerberg next argues that trial counsel was ineffective by failing to present evidence from Millerberg's computer that Millerberg contends would support his "claim that he was online while Dea Millerberg (Dea) committed the crime." He also argues that trial counsel should have obtained a forensic examination of his computer to show the time of activity.[2] Again, Millerberg cannot show any prejudice to support his claim of ineffective assistance.

¶9    Trial counsel issued a subpoena to Stevens-Henager College during trial. The subpoena sought login records from the date of the crime. Although the subpoena was untimely

---

2. In Millerberg's rule 23B motion, he also requested funding for an examination of his computer. In contrast to the juror bias issue, which was denied without prejudice pending reconsideration of funding, this court denied remand on the computer issue with prejudice. Millerberg failed to provide an affidavit that supported the need for an examination of his computer. He also did not allege facts that showed prejudice, because his claims of being on the computer were not inconsistent with the timing of events or his own statements to the police and other witnesses regarding his computer use. Millerberg later filed an addendum to his rule 23B motion that included his affidavit and other materials he argues would support a remand and requested reconsideration of the motion. The addendum has previously been stricken and the request for reconsideration is denied.

pursued, the records were obtained by a State investigator. In court—but out of the presence of the jury—the investigator testified that the computer log showed that Millerberg had checked his grades and was otherwise logged on to the college home page for about forty-six minutes.

¶10   Trial counsel pursued the records in an effort to impeach Dea's testimony and timeline, and to essentially provide an alibi for Millerberg if it could be shown that he was actively on the computer at relevant times. However, the records obtained did not indicate the time of login, and regardless, were not inconsistent with Dea's testimony or Millerberg's own statements to police. Millerberg told the police and other witnesses that he was doing classwork online until Dea and Victim returned from an errand and then had logged off and gone to bed. The records obtained were not exculpatory or even relevant. In fact, although they were obtained before the end of trial, the records were not presented to the jury. As a result, there is no prejudice shown by failing to obtain the records sooner than during trial. Accordingly, his claim of ineffective assistance of counsel regarding pursuing computer records fails.

¶11   Finally, Millerberg contends that trial counsel was ineffective because counsel did not move for a directed verdict. Millerberg argues that the State's evidence was insufficient to establish that he injected Victim with drugs and was insufficient to establish cause of death. However, Millerberg misstates the evidence and ignores the whole evidentiary context in his arguments.

¶12   Trial counsel's failure to make motions "which would be futile if raised does not constitute ineffective assistance." *State v. Wallace*, 2002 UT App 295, ¶ 22, 55 P.3d 1147. In evaluating whether a motion for directed verdict would be successful, this court reviews the evidence and all reasonable inferences to be drawn therefrom, and assesses whether "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v.*

*McCallie*, 2016 UT App 4, ¶ 39, 369 P.3d 103. The evidence presented was sufficient for a jury to find that Millerberg injected Victim and that a drug overdose caused her death. A motion for directed verdict would have been futile given the evidence presented.

¶13    Millerberg argues that the evidence was insufficient to show that he injected Victim with drugs. However, Dea testified that she saw Millerberg prepare syringes and that Millerberg administered the shots to Victim. Dea directly saw the injection into Victim's neck. For two other shots, she saw Millerberg bend over Victim, although she did not see the injection site. The reasonable inference, however, is that Millerberg injected the syringe into Victim, particularly in light of Victim's lack of experience with intravenous drug use. In addition, Millerberg admitted to a cellmate that he had injected Victim with drugs. In sum, there was sufficient evidence that Millerberg injected Victim to survive a motion for directed verdict on that issue.

¶14    Millerberg also contends that the medical examiner's testimony was insufficient to establish cause of death. The ME indicated the cause and manner of death as "undetermined" on Victim's death certificate. ME testified that he could not rule out other possibilities of cause of death to a medical certainty due to the advanced state of decomposition of the body. However, ME also testified that the level of drugs in Victim's muscle tissues was sufficient to be lethal. ME stated that "death as a direct result of these drugs is a very adequate explanation of the death and quite honestly in this case is the best explanation there is." With that testimony, the evidence was sufficient to survive a motion for directed verdict regarding cause of death.

¶15    In sum, Millerberg has not shown that he received ineffective assistance of trial counsel. Affirmed.

———————