2019 UT App 131

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ERIKA VIGIL,
Appellant.

Opinion
No. 20170469-CA
Filed August 1, 2019

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 161901897

Peter Daines, Attorney for Appellant

Sean D. Reyes and Jeffrey D. Mann, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1 Erika Vigil (Defendant) saw her live-in boyfriend (Boyfriend) point a gun at the head of someone (Victim) who was trying to help her. Boyfriend also took Victim's wallet and phone before fleeing the scene. Once the police arrived and questioned her, Defendant repeatedly denied knowing the person who committed these crimes and gave them a name she knew was false. Ultimately, though, her relationship with Boyfriend came to light and she was charged with obstructing justice and convicted after a jury trial. Defendant appeals, arguing she received ineffective assistance of counsel when her attorney did not object to one of the jury instructions. We affirm.

BACKGROUND

¶2      Victim was returning home after removing snow from his neighbors' driveways when Defendant, who "looked frantic and scared," approached him asking for help.[1] Defendant had just escaped from a car Boyfriend was driving after he assaulted her because he believed she had "snitched" to the police about a friend. In light of Defendant's distress, Victim handed her his phone and she made a call, then asked him for a ride. Victim urged Defendant to call the police, but she refused.

¶3      A car approached, parking near them, and Boyfriend yelled at Defendant, "Get in the fucking car, bitch." Victim raised his phone to photograph Boyfriend, who "exited the vehicle with a handkerchief up over his face with a gun drawn running at [Victim]." Victim testified the gun was "pointed in [his] face and [Boyfriend] demand[ed] [his] phone." Victim threw down the phone and Defendant picked it up then took Victim's wallet.

¶4      After a person in a nearby house opened a door and announced "[t]he cops are on their way," Boyfriend got back into the car and fled the scene, but within a short distance his car collided with another vehicle. Defendant went to Boyfriend's car and looked for something, then asked the driver of the other vehicle "where [Boyfriend] went." After the vehicle's driver told Defendant that Boyfriend had "just [run] up the street," Defendant said she would "go find him."

¶5      Defendant eventually went inside a nearby house, where she was interviewed by one officer, then another. Apparently unwilling to "snitch" on Boyfriend, Defendant told each officer she had accepted a ride from a stranger because he was "cute," and she repeatedly said she did not know the car's driver, but

---

1. "[W]e recite the facts in the light most favorable to the jury's verdict." *State v. Lane*, 2019 UT App 86, ¶ 2 n.1.

thought his name was Joey. Defendant also gave the officers misleading information about where she lived. Not surprisingly, the ensuing search for "Joey" was unsuccessful. After more than a week of investigation, the police identified Boyfriend as a suspect and learned that he and Defendant lived in the same apartment. They obtained surveillance video from a store Boyfriend ran through after the crash and showed it to Defendant, who finally identified Boyfriend.

¶6 Defendant was charged with obstruction of justice, and the matter proceeded to a jury trial. At the conclusion of trial, the judge asked counsel about the proposed jury instructions, including Instruction 28, and Defendant's counsel (Trial Counsel) said, "They look good to the defense." Instruction 28 told the jury that to convict Defendant of obstructing justice, it must find that she:

> Knowingly or intentionally, and with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense; (a) Prevented by deception, any person from performing any act that might aid in the discovery, apprehension, prosecution, conviction, or punishment of any person; OR (b) Provided false information regarding a suspect . . . AND; [t]he conduct which constituted a criminal offense would be a . . . first degree felony.

¶7 Defendant was convicted and now appeals.


ISSUE AND STANDARD OF REVIEW

¶8 Defendant argues Trial Counsel "rendered ineffective assistance of counsel for failing to object to Instruction 28." "When a claim of ineffective assistance of counsel is raised for

the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Lopez*, 2019 UT App 11, ¶ 22, 438 P.3d 950 (quotation simplified).

## ANALYSIS

¶9 Defendant contends Trial Counsel "rendered ineffective assistance of counsel for failing to object to Instruction 28." She asserts a reasonable attorney would have objected because Instruction 28 allowed the jury to "convict [her] upon proof that she acted knowingly when the applicable statute requires the State [to] demonstrate she acted with specific intent." We are not convinced. Because Instruction 28 "fairly instructed the jury about the applicable law," we conclude Trial Counsel was not deficient in approving it. *See State v. Liti*, 2015 UT App 186, ¶ 12, 355 P.3d 1078.

¶10 The Sixth Amendment to the United States Constitution guarantees criminal defendants a right to effective assistance of counsel. U.S. Const. amend. VI; *see also Strickland v. Washington*, 466 U.S. 668, 686 (1984). "We evaluate whether a defendant has received ineffective assistance of counsel under [a] two part test." *Gregg v. State*, 2012 UT 32, ¶ 19, 279 P.3d 396. "First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* (quotation simplified). The inability to establish either element defeats the claim. *State v. Lopez*, 2019 UT App 11, ¶ 23, 438 P.3d 950.

¶11 "Failure to object to jury instructions that correctly state the law is not deficient performance." *State v. Lee*, 2014 UT App 4, ¶ 22, 318 P.3d 1164. "The general rule for jury instructions is that an accurate instruction upon the basic elements of an offense is essential." *State v. Bird*, 2015 UT 7, ¶ 14, 345 P.3d 1141 (quotation simplified). Essential elements of an offense generally include the "conduct [that] is prohibited by law," Utah Code

Ann. § 76-2-101(1)(a) (LexisNexis 2017), and "the required mens rea," *Bird*, 2015 UT 7, ¶ 14; *see also* Utah Code Ann. § 76-2-102 (LexisNexis 2017) ("Every offense not involving strict liability shall require a culpable mental state."). "An appropriate jury instruction must also distinguish between the general and specific intent requirements of an offense." *Bird*, 2015 UT 7, ¶ 17. But "even if one or more of the instructions, standing alone, are not as full or accurate as they might have been, counsel is not deficient in approving the instructions as long as the trial court's instructions constituted a correct statement of the law." *State v. Painter*, 2014 UT App 272, ¶ 6, 339 P.3d 107 (quotation simplified).

¶12    Instruction 28 provided the elements of obstruction of justice. "A person commits obstruction of justice when she engages in one of several enumerated activities . . . and acts with intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment of any person regarding conduct that constitutes a criminal offense." *Salt Lake City v. Valdez-Sadler*, 2015 UT App 203, ¶ 7, 358 P.3d 341 (quotation simplified); *see also* Utah Code Ann. § 76-8-306(1) (LexisNexis 2017). There is no dispute that Instruction 28 accurately instructed the jury on the relevant "prohibited conduct" by requiring the State to prove Defendant provided false information regarding Boyfriend or prevented by deception his discovery, apprehension, prosecution, conviction, or punishment. *See* Utah Code Ann. § 76-8-306(1)(b), (j). Defendant asserts that "the only factual dispute in this case was whether [she] lied with the requisite criminal intent." Her claim is that Instruction 28 "substantially reduced the State's burden with respect to the mental state element" by instructing the jury that "it could convict [her] upon proof that she acted knowingly when the applicable statute require[d] the State [to] demonstrate she acted with specific intent." This argument misses the mark.

¶13    To be sure, obstruction of justice "is a crime of specific intent." *State v. Maughan*, 2013 UT 37, ¶ 13, 305 P.3d 1058. But as

the State correctly explains, Utah courts use the term specific intent "'to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime.'" (Quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.2(e) (3d ed. 2017).) Even when an offense contains a strict liability element, "our criminal code requires proof of mens rea for each element of a non-strict liability crime." *State v. Barela*, 2015 UT 22, ¶ 26, 349 P.3d 676 (citing Utah Code section 76-2-101(1)). Thus, obstruction of justice requires proof of both a general culpable mental state as to conduct *and* the specific intent to cause a result. *See State v. Hutchings*, 2012 UT 50, ¶ 14 n.3, 285 P.3d 1183 (explaining that "Utah's criminal code no longer applies the labels of specific intent and general intent" but "[t]he distinction is still embodied in our case law . . . described as intent to cause a result and intent as to conduct, respectively"). Because the statute "does not specify a culpable mental state" for the general intent element, that element may be established by showing "intent, knowledge, or recklessness." Utah Code Ann. § 76-2-102; *see also id.* § 76-8-306(1).

¶14 Here, Instruction 28 properly instructed the jury on the mens rea for obstruction of justice. First, it satisfied the general mens rea requirement by informing the jury that Defendant must have "[k]nowingly or intentionally" lied to the police.[2] Second, Instruction 28 satisfied the specific intent requirement by informing the jury that Defendant must have lied to the police "with the intent to hinder, delay, or prevent the investigation, apprehension, prosecution, conviction, or punishment" of Boyfriend. In short, Instruction 28 correctly

---

2. It would have been proper to include the mental state of "recklessness," but this omission does not change our analysis. *See* Utah Code Ann. § 76-2-104(2) (LexisNexis 2017) ("If acting recklessly is sufficient to establish the culpable mental state for an element of an offense, that element is also established if a person acts intentionally or knowingly.").

stated the law by including the culpable mental states of "knowingly or intentionally" for the general mens rea element as well as "with intent to hinder, delay, or prevent" for the element of specific intent.

¶15   We are sympathetic to Defendant's claim that the jury instructions could have been better. Although we conclude that the jury instructions accurately stated the law, we see no harm in explaining to the jury "the distinction between the general and specific intent requirements." *State v. Bird*, 2015 UT 7, ¶ 17, 345 P.3d 1141 (quotation simplified). For example, discussing respectively in separate paragraphs the specific intent requirement and the required mens rea as to conduct, as was done in the instruction reviewed in *State v. Carrell*, 2018 UT App 21, 414 P.3d 1030, would have avoided any claimed confusion about what Defendant refers to as "dual mental states." Further, although the jury was instructed that some crimes require a mental state of "intentionally or knowingly" and others require only that a defendant act "recklessly . . . or with *some other specified mental state*," the instructions did not state specifically that some crimes also require the specific intent to cause a result. (Emphasis added.) As Defendant notes in her brief, it may have been helpful to include a clause that more thoroughly explained this idea. But although these changes may have improved the instructions, Instruction 28 adequately explained the mens rea required under the statute by providing that Defendant must have acted "[k]nowingly or intentionally, *and* with intent to hinder, delay," etcetera. (Emphasis added.); *see also* Utah Code Ann. § 76-2-101(1) (LexisNexis 2017); *id.* § 76-8-306(1).

¶16   In sum, the jury instructions "fairly instructed the jury" on the elements of obstruction of justice. *See State v. Liti*, 2015 UT App 186, ¶ 12, 355 P.3d 1078. And because the jury received an accurate statement of the law, we conclude that Trial Counsel did not render deficient performance for approving the instructions.

CONCLUSION

¶17    Trial Counsel did not render ineffective assistance of counsel by approving Instruction 28. We affirm.

―――――――